JOHN R. MALIA

*vs.*

LEWISTON, AUGUSTA AND WATERVILLE STREET RAILWAY COMPANY.

EDWARD A. MCILHERON *vs.* SAME.

Androscoggin.    Opinion September 14, 1910.

*Street Railways.    Collision with Vehicle.    Negligence.    Care.    Speed of Cars. Evidence.*

In actions against a street railway company to recover damages for personal injuries caused by a collision between the carriage in which the plaintiffs were riding and a street car of the defendant, *held* that the evidence was not sufficient to show that the car was defective or that the motorman was negligent in not stopping the car in season to prevent the collision.

The rule as to the degree of care required of street car motormen in approaching street crossings does not apply to cars approaching a team between street crossings, where it appears that the driver will have no occasion to drive across the tracks.

Evidence *held* to show that it was not negligence to run a street car thirteen miles an hour, for a short distance, through a particular street in a city at five o'clock in the afternoon in the month of October.

In actions against a street railway company to recover damages for personal injuries caused by a collision between the carriage in which the plaintiffs were riding and a street car of the defendant, *held* that the driver of the horse drawing the carriage failed to exercise the degree of care and prudence which the exigency required.

On motion in each case by defendant.    Sustained.

Two actions on the case to recover damages for personal injuries received by the plaintiffs and caused by the alleged negligence of the

defendant. Plea, the general issue in each case. The two actions were tried together. In the first entitled action the plaintiff recovered a verdict for $494.28, and in the second entitled action the plaintiff recovered a verdict for $156.25. The defendant filed a general motion in each case to have the verdict set aside.

The cases are stated in the opinion.

*McGillicuddy & Morey*, for plaintiffs.

*Newell & Skelton*, for defendant.

SITTING : WHITEHOUSE, SAVAGE, PEABODY, CORNISH, KING, JJ.

WHITEHOUSE, J.    About five o'clock in the afternoon of October 21, 1907, the plaintiffs received personal injuries from a collision between the carriage in which they were riding and the defendant's street railway car on upper Main street in Lewiston, and each recovered a verdict for damages against the defendant company. The two cases arose from the same state of facts and were tried together upon the same evidence. They come to the Law Court on motions to set aside the verdicts as against the evidence.

The following facts appear to be satisfactorily established by the evidence. The two plaintiffs who were policemen in the city of Lewiston, were riding in a single open carriage northerly on Main street towards the Maine State Fair Grounds. The plaintiff McIlheron owned the team and on the afternoon in question was driving out for pleasure and for the purpose of exercising his horse, and the plaintiff Malia was riding with him by invitation. At the place of the accident, nearly opposite the residence of Dr. White and for several hundred feet both northerly and southerly from that point, the track of the street railway is laid along the easterly side of the street, being the right hand side traveling north. Thus an unobstructed roadway was left for carriage travel not less than thirty feet in width, and a short distance southerly from the point of the accident, is a traveled way for carriages known as Strawberry Avenue, leading at right angles westerly out of Main street. The plaintiff McIlheron, was sitting on the right hand side of the carriage driving the horse. They were traveling on the easterly

side of the road within "three or four feet" from the westerly rail of the railroad track. There is a slight curve in the railroad track nearly opposite the residence of George B. Bearce, and from that point southerly, it is a descending grade of three per cent for a distance of at least 250 feet. According to the testimony of both of the plaintiffs, the horse showed signs of fear when the car was 250 feet distant. The motorman admits that as the car was rounding the curve he saw that the plaintiffs' horse began to "prick up his ears and show signs of fright." As the car approached the horse became more frightened and began to rear and jump, and when the car was about fifty feet distant from him, he suddenly bolted to the right across the railroad and before the carriage had crossed the rails, the car struck it, throwing the plaintiffs to the ground and causing the injuries of which they complain.

The plaintiffs contend that the defendant company was legally responsible for the collision, first, because the car was running at a dangerous and unlawful rate of speed, and second, because as the plaintiffs allege, the car was defective in two respects. It is claimed that the reverse power did not work efficiently when applied and that there were flat wheels on the car which made a loud, unusual and pounding noise. Finally it is contended in behalf of the plaintiffs that the doctrine of prior and subsequent negligence applies ; that the motorman saw the plaintiffs' team in a place of danger and by the exercise of ordinary vigilance and precaution, he might have avoided the collision either by slackening the speed of his car or stopping it altogether. On the other hand it is denied that the car was being propelled at a dangerous rate of speed and denied that there was any failure of duty on the part of the defendant in any respect towards the plaintiffs on the occasion in question.

The law governing the relations between street railway cars and ordinary teams, has been so carefully examined and fully considered both upon reason and authority in the recent decisions of this court, that any further discussion of the rules applicable to this case is not required. *Denis* v. *Street Railway Co.*, 104 Maine, 39 ; *Marden* v. *Street Railway Co.*, 101 Maine, 41 ; *Butler* v. *Street Railway,*

99 Maine, 149; *Robinson* v. *Street Railway Co.*, 99 Maine, 47; *Warren* v. *Railway Co.*, 95 Maine, 115; *Fairbanks* v. *Railway Co.*, 95 Maine, 78; *Atwood* v. *Railway Co.*, 91 Maine, 399; *Flewelling* v. *Railroad Co.*, 89 Maine, 585.

With respect to the plaintiffs' suggestion that the car was defective, it is the opinion of the court that the evidence would not warrant the jury in finding either that the car had flat wheels, or that the "reverser" was out of repair. The testimony of the motorman was that the "reverser didn't take much effect" on account of the slippery condition of the rails caused by the moisture and the fallen leaves; and neither of the plaintiffs testified to any "pounding noise" caused by flat wheels. McIlheron states that the buzzing of the "trolley" made considerable noise and Malia admits that the noise from "buzzing and so on" was about the same as that of any other car. There is nowhere any intimation of flat wheels in the testimony of either of the plaintiffs. In view of their testimony, and the positive denial of the conductor and motorman that there were any flat wheels on that car, the opinion of Newell Preble a laborer at Mr. Bearce's, that he judged from the sound of the car as it passed that it had flat wheels is not convincing. It does not appear that he had any actual knowledge in regard to it, and his testimony is not sufficient to prove negligence on that ground.

But it is insisted that at the time in question the defendant's car was negligently run at an unreasonable and dangerous rate of speed on the descending grade of Main street, and that due care was not exercised by the motorman to have his car under such control as it approached the plaintiff's team that he would be able to stop it in season to prevent a collision in the event that the horse should bolt across the track.

It appears that the schedule time on this trip involved an average speed of twelve miles an hour, and the evidence would not support a finding that at the time the motorman first saw the plaintiffs' team, the speed exceeded thirteen miles an hour. In determining whether this rate of speed was unreasonable under the circumstances existing at that time, it must be considered that this collision did not occur while the plaintiffs were attempting to drive across the

track into another street at right angles to Main street. The rule respecting the degree of caution and vigilance to be exercised by motormen in approaching public street crossings is not applicable here. The plaintiffs were driving up a broad roadway more than thirty feet wide with no other team in sight, and with no street junction on their right hand in that vicinity. The motorman saw the team approaching when the car was 250 feet distant and saw that the plaintiffs would have no occasion to drive across the track before meeting the car. He saw that they were driving within "three or four feet" of the track and that their horse showed some signs of nervousness and fear, but he also saw that there was ample opportunity for the driver to guide his horse to a place of greater safety if he deemed it necessary, either by turning around or driving to the westerly side of the street, twenty-five feet distant from the track, or driving down Strawberry Avenue. He saw that the team indicated no purpose to do either of these things and he was warranted in assuming that the driver understood the disposition of his horse and was confident of his ability to control him and desirous of exercising him near a railway track, that the horse might become accustomed to the sight and sound of moving cars. In confirmation of this view, it appears that this was a young horse and though otherwise of a gentle disposition he had shown similar signs of fright a week before at the appearance of a slowly approaching street car on Court street in Auburn and suddenly turned around and bolted down another street intersecting Court at right angles. On the day of the accident in question, the motorman knew that the plaintiffs had an unobstructed view of the car and was justified in assuming that they were familiar with the ordinary rate of speed of the car on that line, and must have observed its speed in fact at that time.

At the time of the collision there was but one passenger in the car, the young son of an officer of the defendant company. Five o'clock P. M. appears to have been an hour when there were very few passengers in the Main street cars, and the plaintiffs' team was the only one on the street in that vicinity. Under all these circumstances and the other conditions shown by the evidence a speed of

even thirteen miles an hour for a short distance is not necessarily reckless or dangerous one, and cannot be deemed actionable negligence.

Nor does the evidence support the conclusion that there was a failure of duty on the part of the motorman in not stopping the car in season to prevent a collision after discovering the rearing and plunging of the horse the moment before he bolted across the track. The evidence is plenary and uncontradicted by any direct evidence that the motorman applied the brake and reversed the power on the car and did all he could to stop it as soon as he saw the rearing and plunging towards the track. This was a situation of unexpected danger which under all of the circumstances and for the reasons above stated, the motorman in the exercise of reasonable care and forethought could not have anticipated, and a car running at the rate of thirteen miles an hour or nineteen feet in a second, could not be stopped on rails in the condition of those in question in season to prevent a collision.

The horse was frightened, not by the extraordinary speed or unusual sound of the car, but the usual sound and appearance of the car approaching at its customary rate of speed at that point. It has been seen that he was frightened the week before by a "very slowly" approaching car on Court street in Auburn.

The conclusion is irresistible that in exercising his horse on a public street, and in sight of an approaching car, the driver himself failed to exercise the degree of care and prudence which the exigency required, and he must be held to have entered upon the unfortunate experiment at his own risk. It is unnecessary to consider whether McIlheron's want of care would have been imputable to the plaintiff Malia or not, if a failure of duty on the part of the defendant company had been shown. As the evidence fails to prove actionable negligence on its part, neither of the plaintiffs is entitled to recover damages against the defendant.

The certificate in each must therefore be,

*Motion sustained.*
*Verdict set aside.*